## *The President &c. of the* STRAFFORD BANK *vs.* CROSBY.

Where it was the usage of a bank to suffer the accommodation notes of its debtors to remain over-due, the interest being paid in advance at every return of the period of renewal, and one of its former directors, conusant of the usage, and acquiescing in it, became surety on a note to the bank, which was afterwards suffered thus to lie over for more than two years, until the principal became insolvent ;—it was held that this was not such a giving of new credit to the principal as discharged the surety.

THIS was an action of *assumpsit* on a promissory note to the plaintiffs, which the defendant and one *Wyatt* had signed jointly and

severally with one *Varney*, and as his sureties, dated *March* 28, 1825, for six hundred dollars, payable in sixty days with interest. The defendant had been a director of the bank from its original institution in 1804, till the year 1821, excepting one year ; during two of which years he was its President. It was the usage of the bank from the beginning, to discount accommodation notes at sixty days ; and at the maturity of the note to receive checks and interest, and frequently the interest alone, for the next sixty days, endorsing the same ; and so *toties quoties*, without any vote of the directors, till the note was required to be taken up. This was done without any renewal of the note, or consulting the sureties ; it being tacitly understood that the note was to lie during the time in which interest was regularly paid.; but that the principal or sureties were in the meantime at liberty to pay the whole debt, if they chose. In this usage the defendant acquiesced, up to the time of his leaving *Dover* in New-Hampshire, in which the bank was situated, and removing to the county of *Penobscot* in this State, which was in *April*, 1821.

A note signed by *Varney* as principal, and one *Mann* and one *Chandler* as sureties, on which $619,74 was due, was taken up *May* 25, 1821, and a new note for six hundred dollars, with the defendant and *Chandler* as sureties given in its stead ; and this latter note was exchanged *May* 25, 1825, for the note now in controversy. The interest was paid by *Varney*, and regularly indorsed on the note, up to *Dec.* 31, 1827. He resided in *Dover*, and was in good business and possessed of sufficient attachable property to have paid the debt, till *April*, 1828, when he failed.

Upon this evidence the action was submitted to the decision of the Court.

*J. & E. Shepley*, for the plaintiffs, cited *Lock v. United States,* 3 *Mason*, 455 ; *Hunt v. Bridgham*, 2 *Pick.* 585 ; *Rees v. Barrington*, 2 *Ves.* 540 ; *Frye v. Barker*, 4 *Pick.* 384 ; *Bellows v. Lovell*, 5 *Pick.* 310 ; *Oxford bank v. Lewis*, 8 *Pick.* 458 ; *Varner v. Nobleborough*, 2 *Greenl.* 126 ; *Lincoln & Ken. bank v. Page*, 9 *Mass.* 157 ; *Loring v. Gurney*, 5 *Pick.* 16 ; *Renner v. Bank of Columbia*, 9 *Wheat.* 582 ; *Mills v. Bank, U. States*, 11 *Wheat.* 438.

*N. Emery*, for the defendant, cited 2 *Bl. Law. Tracts*, 19 ; *Nesbit v. Smith*, 2 *Brown's Ch. Rep.* 579 ; 10 *East.* 34 ; *The People v. Jansen*, 7 *Johns.* 232 ; *Williams v. Gilman*, 3 *Greenl.* 286 ; *Homer v. Dorr*, 10 *Mass.* 26 ; *Bank of Washington v. Triplet*, 1 *Pet.* 30 ; 12 *Wheat.* 554 ; *Kennebec bank v. Tuckerman*, 5 *Greenl.* 130.

MELLEN C. J. delivered the opinion of the Court at the ensuing *June* term in *Penobscot.*

The cases cited by the counsel for the plaintiff shew most clearly that persons transacting business at a bank are presumed to be acquainted with its usages, and assenting to them, and are consequently bound by them, even when those usages are deviations from the course established by legal principles. For this season such persons, when making contracts with a bank, are considered as doing it with reference to such usages ; indeed, they are, in legal contemplation, a part of the contract. On this ground it is contended that the present action is maintainable. The plaintiff does not rely on merely presumed knowledge, on the part of the defendant, of the nature of the usages of the bank ; it appears he had express knowledge, from his having been for several years a director, and for almost two years president, ending in *April*, 1821, about which time he removed to the county of *Penobscot*, in *Maine.* The usage in question is particularly stated by the cashier. According to this, the course of the bank was to extend credit to the principal debtor on his payment of interest in advance for the usual term, without a renewal of the note or consulting the sureties ; and it was understood that the note was to lie in the bank during the time for which interest was paid ; but the principal or sureties had liberty to take up the note in the mean time if they chose so to do. The note on which the present action is founded, it is true, was not given till 1825, about four years after the defendant removed from *Dover ;* but it was given in payment of another note for the same sum, taken up, and which had been given in *May*, 1821 ; which, of course, must have been in the bank in the interim, and the interest thereon must have been paid. In the note of 1821, *Crosby* and *Chandler*

25

were the sureties ; in that of 1825, now in suit, *Crosby* and *Wyatt* are the sureties. Probably this new note was given on account of the change of one of the sureties. It appears further that the note of 1821, grew out of one given in 1819, for $619,74, which was taken up in 1821. The defendant, when he signed the note in question, must have known that he had not paid the interest which had become due upon it ; and the fact is that it had been regularly paid by *Varney*, the principal. These circumstances are evidence of his recognition of the usage, (which has never been changed since the bank was incorporated,) as lately as in 1825, and of his continued liability in consequence. There is no proof that the defendant ever requested the bank to call on the principal and secure payment ; and the cases cited to the point shew that mere delay to prosecute the principal does not discharge a surety, unless some fraud has been practised. The continued solvency of *Varney* until *April,* 1828, does not constitute a defence, in the circumstances of this case, and we are all of opinion that the action is well maintained ; and according to the agreement of the parties a default must be entered.